1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9           **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   MARIE PEREZ,                          CASE NO. 3:13-CV-01212-H-
                                           JLB
12                        Plaintiff,
                                           **ORDER:**
13        vs.                              **(1) DENYING PLAINTIFF'S
                                           MOTION FOR SUMMARY
14                                         JUDGMENT; and**

15                                         [Doc. No. 9]

16   COROLYN W. COLVIN, Acting             **(2) GRANTING
17   Commissioner of Social Security       DEFENDANT'S CROSS-
                                           MOTION FOR SUMMARY
18                        Defendant.       JUDGMENT**

19                                         [Doc. No. 10]

20          On May 22, 2013, Marie Perez ("Plaintiff") filed a complaint pursuant to 42

21   U.S.C. § 405(g) requesting judicial review of the Social Security Administration

22   Commissioner's ("Defendant") final decision. (Doc. No. 1.) On October 5, 2013,

23   Plaintiff filed a motion for summary judgment, requesting that the Court reverse the

24   Commissioner's final decision, or alternatively, remand the case for more complete

25   findings. (Doc. No. 9 at 13.) On November 4, 2013, the Commissioner filed a cross-

26   motion for summary judgment and a response in opposition to Plaintiff's motion. (Doc.

27   Nos. 10 & 11.) On November 18, 2013, Plaintiff filed an opposition. (Doc. No. 12.)

28   The Court denies Plaintiff's motion for summary judgment, grants Defendant's cross-

1  motion for summary judgment, and affirms the decision of the Administrative Law
2  Judge ("ALJ").

3  ## Background

4      On March 24, 2010, Plaintiff applied for disability insurance benefits, claiming
5  a May 12, 2009 onset date. (Administrative Record ("AR") 122-130, 172.) The
6  Commissioner denied the application for benefits initially on July 27, 2010, and again
7  upon reconsideration on November 5, 2010. (AR 57-62, 64-70.) On November 11,
8  2010, Plaintiff requested a hearing before an ALJ. (AR at 71.)

9      On November 15, 2011, Plaintiff, testified before an ALJ. (AR 27-52.) The ALJ
10  also heard testimony from a vocational expert. (Id.) In a decision dated November 28,
11  2011, the ALJ determined that Plaintiff had the following severe impairments: neck
12  and low back pain, headaches, left side decreased sensation, left ear hearing loss, and
13  obesity. (AR 13.) The ALJ determined that Plaintiff had a residual functional capacity
14  to perform work involving light exertion on a full-time basis, and was therefore able
15  to return to past relevant work as a medical assistant. (AR 20.) Further, the ALJ
16  concluded that there were jobs that existed in the national economy that Plaintiff could
17  have performed. (AR 20.) Based on his findings, the ALJ determined that Plaintiff was
18  not disabled from May 12, 2009, the alleged onset date, through November 28, 2011,
19  the date of the ALJ's decision. (AR 21.) The ALJ's decision became the final decision
20  of the Commissioner when, on March 29, 2013, the Appeals Council denied Claimant's
21  request for review. (AR 1-3.)

22  ## Discussion

23  ## I. The Legal Standard for Determining Disability

24      To qualify for disability benefits under the Social Security Act, an applicant must
25  show that: (1) he suffers from a medically determinable physical or mental impairment
26  that can be expected to result in death or that has lasted or can be expected to last for
27  a continuous period of not less than twelve months; and (2) the impairment renders the
28  applicant incapable of performing the work that he previously performed or any other

substantially gainful employment that exists in the national economy. See 42 U.S.C. § 423(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). An applicant must meet both requirements to be disabled. Id. The Social Security Regulations set forth a five-step sequential evaluation process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920. The Ninth Circuit summarized this process as follows:

> The burden of proof is on the claimant as to steps one to four. As to step five, the burden shifts to the Commissioner. If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. The five steps are:
>
> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520, 416.920.

## II. Standards of Review for Social Security Determinations

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision. 42 U.S.C. § 405(g). Upon review, the district court must affirm the Commissioner's decision if it was supported by substantial evidence and based on proper legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "more than a mere scintilla" but less than a preponderance and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court must consider the record as a whole, weighing both the evidence that supports and undermines the Commissioner's conclusions. Id.; Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). "Where evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision." Mayes v. Massanar, 276 F.3d 453, 459 (9th Cir. 2001).

In addition, a reviewing court will not reverse an ALJ's decision for harmless error. Tommassetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). An error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Id. (internal quotation marks omitted). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

## III. Analysis

Plaintiff moves for summary judgment on the grounds that the ALJ improperly rejected the Plaintiff's subjective complaints of pain, and that the ALJ failed to provide specific reasons for rejecting the Plaintiff's testimony. (Doc. No. 9 at 4.) Defendant cross-moves for summary judgment, arguing that the ALJ provided legally valid considerations for finding Plaintiff's testimony not fully credible and that substantial

evidence supported his decision. (Doc. No. 10 at 3-4.) The Court concludes that the ALJ provided specific, clear, and convincing reasons for finding the Plaintiff's evidence not credible, and that substantial evidence supported the ALJ's decision.

## A. Rejection of Claimant's Subjective Symptom Testimony

Once the claimant produces objective medical evidence of an underlying impairment, the ALJ must consider the claimant's subjective reports of pain. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). An ALJ can only reject a claimant's subjective reports of pain "by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). "[I]t is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). To determine whether the claimant's testimony is credible, the ALJ may consider factors including the claimant's reputation for truthfulness, the claimant's unexplained reasons for failing to follow a prescribed course of treatment, and the claimant's daily activities. See, e.g., Orteza v. Shalala, 50 F.2d 748, 750 (9th Cir. 1995); Smolen, 80 F.3d at 1284.

Plaintiff was in a motor vehicle accident on March 16, 2009. (AR 32.) On March 31, 2009, Plaintiff reported that most of her aches and pains had resolved with moderate discomfort in her posterior rib cage. (AR 318.) But, in May 2009, Plaintiff began complaining of headaches, neck pain, and back pain. (AR 32.) Between June 15 and July 20, 2009, Dr. Wiltse, a treating physician, prescribed and administered a series of three epidural steroid injections into Plaintiff's lumbar spine and ribs. (AR 331-351.) Plaintiff underwent a second course of three epidural steroid injections in February and March of 2011. (AR 657-62.) The ALJ noted that the Plaintiff reported her symptoms improving by 60%-70% after these procedures. (AR 18.) In June 2009, Plaintiff saw Dr. Blumenfeld, a neurologist, for her headaches. (AR 447.) Dr. Blumenfeld prescribed Plaintiff Topomax, Pamelor, and several other medications for headache control. (AR 443-47.) Dr. Blumenfeld observed that the Plaintiff had limited neck movements, some

tenderness, normal gait, decreased sensation in the left side of her body, excellent memory, adequate attention span, and normal reflexes. (AR 671-72.) Dr. Blumenfeld opined, and the ALJ noted, that Plaintiff had "posttraumatic headaches of only a mild degree." (AR 16.) In 2010, Plaintiff saw Dr. Roper, a surgeon. (AR 18.) After reviewing diagnostic imaging data, Dr. Roper concluded that Plaintiff's cervical spine had moderate stenosis that did not require surgical intervention. (Id.) The ALJ noted that Dr. Roper recommended only physical therapy, weight loss, and exercise. (Id.) The ALJ also noted the 2011 conclusion of Dr. Hong, a radiologist, that the results of a magnetic resonance angiogram ("MRA") of Plaintiff's neck and head were normal. (AR 17.) In August 2011, the Plaintiff went to the hospital complaining of headaches. (AR 18.) As the ALJ noted, the Plaintiff was not admitted, and neurological exams were unremarkable without significant change from past exams. (Id.)

On May 21, 2010, Plaintiff completed a functional report for the Social Security Administration. (AR 195-202.) The ALJ noted that the Plaintiff helped her children get ready for school, drove her children and husband to and from school and work, helped take care of the family's pet dog, cooked, and shopped. (AR 18.)

The Plaintiff submitted objective medical evidence of impairments, including headaches, neck pain, and lower back pain. (AR 32.) After Plaintiff offered subjective testimony that she was in pain, the ALJ found that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms was not fully credible. (AR 16.) The ALJ cited three reasons to support his credibility determination: Plaintiff's daily activities, Plaintiff's conservative treatment history, and the objective medical evidence.

The ALJ relied on Plaintiff's daily activities to establish that her testimony about her pain and limitations was not as severe as she described. (AR 18.) The ALJ noted that, according to Plaintiff's husband, Plaintiff prepared her children for school, transported her children and husband to and from school and work, prepared meals, shopped for groceries, and attended bible study three times per week. (AR 18.)

Additionally, Plaintiff performed household chores and exercised. (AR 17.) Due to inconsistencies between Plaintiff's testimony regarding her daily activities and the intensity of her symptoms, the ALJ concluded that Plaintiff's allegations were not fully credible. (AR 18.) Thus, the ALJ articulated a specific, clear, and convincing reason to find Plaintiff's testimony not credible as to her limitations. See Valentine v. Astrue, 574 F.3d 685, 693-94 (9th Cir. 2009) (holding that the ALJ properly found that claimant's daily activities "did suggest that [Plaintiff's] later claims about the severity of [Plaintiff's] limitations were exaggerated").

The ALJ also relied on evidence of Plaintiff's conservative treatment history to discredit her subjective statements regarding her pain and limitations. (AR 18.) The ALJ noted that the Plaintiff had epidural steroid injections in her lumbar spine that resulted in a 60% to 70% improvement. (AR 18.) Moreover, the ALJ noted that Dr. Roper, an evaluating surgeon, recommended conservative treatment including physical therapy, weight loss, and exercise, but did not require any further spinal surgery. (AR 18.) The ALJ relied on the lack of a more aggressive treatment in concluding that Claimant's symptoms and limitations were not as severe as the Claimant testified. (Id.) Because evidence of a conservative treatment history is sufficient to discount a claimant's testimony regarding severity of an impairment, the ALJ's decision was proper. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995); see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (stating that the claimant's favorable response to conservative treatment undermined the claimant's reports regarding his pain).

Finally, the ALJ relied on objective medical evidence to establish that Plaintiff's allegations about her pain and limitations were not as severe as she alleged. (AR 17-18.) The ALJ found that the Plaintiff still had the capacity to perform work with light exertion based on Dr. Roper's diagnostic imaging and physical examination findings. (AR 17.) The ALJ noted that in June 2009, only three months after the motor vehicle accident, testing done by medical professionals demonstrated that Plaintiff had limited

neck movements, some tenderness, normal gait, decreased sensation in the left side of her body, excellent memory, adequate attention span, and normal reflexes. (AR 17.) While the Plaintiff underwent a neurological consultation for her headaches, Dr. Blumenfield, a neurologist, found that Plaintiff had "posttraumatic headaches of only a mild degree." (Id.) Additionally, the ALJ pointed out that the results of an MRA of Plaintiff's neck and head were normal. (Id.) It was proper for the ALJ to consider the objective medical evidence when determining that Plaintiff's testimony was not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("[M]edical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Accordingly, the ALJ provided specific, clear, and convincing reasons to support this finding. See Smolen, 80 F.3d at 1281.

The Court concludes that the ALJ properly supported his rejection of Plaintiff's subjective reports of pain with specific, clear, and convincing reasons. See Smolen, 80 F.3d at 1281. It was proper for the ALJ to rely on Plaintiff's daily activities, her conservative treatment history, and the objective medical evidence. See id. Therefore, substantial evidence supported the ALJ's decision. See Ukolov, 420 F.3d at 1004.

### Conclusion

The Court concludes that the ALJ's decision was proper. Accordingly, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**
DATED: April 18, 2014

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT